In the Matter of Floyd WOODRUFF and Dolly Woodruff, Bankrupts.

Charles H. SPARRENBERGER, Trustee, etc., Appellant,

v.

NATIONAL CITY BANK OF EVANS-VILLE, INDIANA, Appellee.

No. 12612.

United States Court of Appeals
Seventh Circuit.
Dec. 14, 1959.

William L. Mitchell, Evansville, Ind., Victor Ahrens, Evansville, Ind., for appellant.

Willard C. Shrode, Isidor Kahn, Harry P. Dees, Arthur R. Donovan, Robert Kahn, Evansville, Ind. (Kahn, Dees, Donovan, Kahn & Shrode, Evansville, Ind., of counsel), for appellee.

Before MAJOR, PARKINSON * and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

The appellee, The National City Bank of Evansville, Indiana, filed its claim in these bankruptcy proceedings seeking, *inter alia,* to establish a secured claim for a $46,000 promissory note executed by the bankrupts on November 24, 1956, as covered by the real estate mortgage given to the Bank by the bankrupts on October 5, 1951, to secure the payment of a $16,000 promissory note of the same date, by virtue of paragraph 14 of the said mortgage which reads as follows:

"14. This mortgage shall also secure any and all renewals of said promissory note or any part thereof. It is further agreed that this mortgage shall secure the payment to mortgagee of any other indebtedness which mortgagors may from time to time, while this mortgage is in effect, owe the mortgagee."

* While Judge Parkinson participated in the hearing of oral arguments and a conference of the division judges above-named, he was not present at the time of, and did not participate in, the adoption of this opinion. He concurred in the result reached in this opinion.

The Referee denied the claim as a secured claim. On review the District Court reversed. This appeal by the Trustee in Bankruptcy followed.

The agreed facts are that on November 22, 1957, Floyd and Dolly Woodruff were adjudicated bankrupts on a voluntary petition. Prior thereto, on October 5, 1951, the Bank lent them $16,000. They executed their promissory note therefor and gave the Bank a mortgage on their real estate (containing paragraph 14 quoted above) to secure the payment of that note. The mortgage was duly recorded in Vanderburgh County, Indiana, the county in which the real estate was located. Claim for the unpaid balance of this note was allowed as a secured claim. It is not involved in this appeal.

On November 24, 1956, while the mortgage was in effect, the Bank lent the Woodruffs $46,000, for which they gave the Bank their promissory note.

On December 6, 1956, the Bank, acting by and through its Vice-President, Kenneth O. Henke, executed an affidavit giving notice that the said $46,000 indebtedness was intended to be secured by the aforesaid mortgage. The affidavit was duly recorded in Vanderburgh County, Indiana.

As the facts have been stipulated, we have before us a question of law, which the parties agree is to be determined under the law of the State of Indiana: whether the mortgage is or is not valid security for the $46,000 indebtedness to the Bank, incurred by the Woodruffs subsequent to execution of the mortgage and while it was in effect.

Open-end provisions in a mortgage are valid in Indiana. A mortgage may be taken and held as security for future advances when a provision that such future advances will be covered by the lien, is made a constituent part of the original agreement. Brinkmeyer v. Browneller, 1876, 55 Ind. 487, 494. The Trustee contends that there is no valid mortgage for future advances here because the parties to the mortgage have not in

clear, unambiguous and positive manner disclosed their intent that any further advances are comprehended by the mortgage and come within its coverage.

The Trustee argues that paragraph 14, instead of applying to future loans or advances, implements other provisions of the mortgage giving the Bank a further lien for any payments made by it for taxes, etc., upon the failure of the Woodruffs so to do. However, paragraph 7 of the mortgage provides:

"7. In the event of the failure of the mortgagor to keep the buildings on said premises and those to be erected on said premises, or improvements thereon, in good repair, said mortgagee may pay such taxes, assessments, mortgage and hazard insurance, make such repairs as in its discretion it may deem necessary properly to preserve the property and any sums so paid shall be a further lien on such premises under this mortgage, payable forthwith, with interest at the rate of six per centum (6%) per annum until paid."

and requires no implementation.

The Trustee also contends that "where there is no obligation on the mortgagee, to make advances, or incur liabilities, which are, nevertheless, comprehended by the original agreement, and constitute a constituent part thereof, but are optional with the mortgagee, the liabilities or obligations must, nevertheless, have been made on the faith of the security of the mortgage, in order to come within its coverage."

In support of this theory, the Trustee cites Brinkmeyer v. Browneller, supra; Bowen v. Ratcliff, 1895, 140 Ind. 393, 39 N.E. 860; Schmidt v. Zahrndt, 1897, 148 Ind. 447, 47 N.E. 335; and New v. Sailors, 1888, 114 Ind. 407, 16 N.E. 609.

In Brinkmeyer, the Court said, 55 Ind. at page 494:

"Where there is no obligation on the mortgagee, and such advances or liabilities are merely optional with him, and he has actual notice of a subsequent encumbrance or convey-

ance of the mortgaged premises, before making advances or incurring liabilities, his lien is not good, as against the subsequent purchaser or encumbrance". (citing authorities)

However, in that case, and in the subsequent case of Brinkmeyer v. Helbling, 1877, 57 Ind. 435, 449, the Court found that the mortgagee was bound to become the surety for an amount not to exceed the figure specified in the mortgage and that his knowledge of judgments subsequently rendered against the mortgagor prior to the mortgagee's making advancements to the mortgagor would not interfere with his right to hold the mortgage as security for the future advances.

In Bowen v. Ratcliff, it was averred that the mortgage did not set out the amount secured by it, when plaintiff, assignee of the mortgage, filed a petition for sale of the real estate, and asked the Court to ascertain the amount of the liens to be paid out of the proceeds of the sale.

The mortgage, 140 Ind. at page 395, 39 N.E. at page 861, read:

" * * * to secure any notes that may be given for renewal of said notes or any part thereof, or for interest thereon, and any future advances or other indebtedness due or that may hereafter become due, the mortgagees or either of them from the mortgagors or either of them, to the amount of $10,000.00."

The Court in Bowen held in 140 Ind. at page 397, 39 N.E. at page 862:

"It is essential that the character of the debt and the extent of the incumbrance should be defined with such reasonable certainty as to preclude the parties from substituting other debts than those described, thereby making the mortgage a mere cover for the perpetration of fraud upon creditors." (citing cases)

and observed that the notes referred to by the words "Said notes," were not described and, hence, not secured by the mortgage. In accord with that reasoning, the Court held that notes given

in renewal would not be secured, but that the words "or other indebtedness due or that may hereafter become due, etc." must be held to mean indebtedness other than future advances, or indebtedness evidenced by promissory notes. The answer alleged two notes in the amounts of $840.60 and $1000 given after the mortgage was executed and alleged that they were filed therewith and made a part thereof, and that they were given for advancements to the mortgagor. The Court found that the allegations could apply only to the two notes mentioned and held that if they were given for advances made after the execution of the mortgage and on the faith thereof, they were secured by the mortgage, but if given for, or in renewal of indebtedness not secured by the mortgage, they were not secured by it. Other notes alleged in the answer were held not to come "fairly within the terms used in the mortgage" 140 Ind. at page 398, 39 N.E. at page 862 but these two notes were found to be "sufficiently described in the mortgage aided by the allegations in the answer to render said answer good against the demurrer" which had been erroneously sustained to the answer in the lower court. In the case before us, the factual situation is markedly different from that in the Brinkmeyer and Bowen cases.

In Schmidt v. Zahrndt, supra, Zahrndt sought to foreclose a mortgage executed by Schmidt and his wife. Zahrndt made Tuthill a party defendant. Tuthill had sold the real estate to Schmidt on a recorded deed. Schmidt had given Tuthill a promissory note for the unpaid purchase price and a mortgage on the real estate to secure it. The mortgage was not recorded within the 45 days required by Statute to avoid its being considered as void against a subsequent purchaser or mortgagee in good faith.

Meanwhile, Schmidt negotiated a loan from Zahrndt for $1000 to be paid to him as needed in the building of a house on the real estate. On June 1, 1893, he and his wife executed a mortgage on the real estate to secure the $1000 loan,

evidenced by five promissory notes, all recorded June 6, 1893, well within 45 days of execution. Schmidt received $950 in all from Zahrndt, who had checked the records and found the deed to Schmidt but not the first mortgage which was not recorded until June 24, 1893.

The Court found Zahrndt's to be the first mortgage and Tuthill's the second on the real estate, although a part of the $950 had been advanced after the recording, but prior to actual notice of the Tuthill mortgage. The Court in this case quoted the proposition cited above in Brinkmeyer, with reference to optional advances, and held in 57 Ind. at page 452 that a prior mortgage, duly recorded, had preference over subsequently recorded mortgages, not only for advances previously made, but for advances made after their recording without actual notice thereof; that recording the second incumbrance did not operate as constructive notice, but that actual notice was required. (citing cases)

New v. Sailors, supra, concerned a chattel mortgage which recited that, in 114 Ind. at page 408, 16 N.E. at page 609:

"* * * the mortgagor was indebted to the mortgagee in the sum of $1,700, evidenced by a promissory note dated January 1, 1883, for $1,200, and by standing guaranty of $1,200 to Byram, Cornelius & Co., of the city of Indianapolis, and that if the mortgagor should well and truly pay the note at maturity and save the mortgagee harmless from the guaranty, then the mortgage was to be void."

On the strength of this mortgage the mortgagee claimed priority over the general creditors of the mortgagor for payment of some $900 on nine promissory notes, which he had signed as surety for the mortgagor to Byram, Cornelius and Company; $292.35 to the same company on an account due which he had guaranteed for mortgagor; and $258.98 to Butterworth and Company as surety for mortgagor.

Except for the $292.35, the Court found no showing in the pleadings or evidence that any of these debts had any relation to the mortgage which was specifically conditioned on a promissory note of $1200 due mortgagee and the guaranty for $1200 to Byram, Cornelius and Company. The Court did say that proper averments might have been made to show that the consideration for the $1200 note was related to the debts paid and evidence would have been admissible to explain the condition, or, in the case of ambiguity, to identify and apply the condition of the mortgage. In the absence of explanatory averments and proof, the Court declined to assume that debts which in no way corresponded to the description were within the terms of the mortgage.

Judgment in the lower court for the entire amount of $1451.96 was, therefore, reversed on the ground that it was not shown that the debt sued for was the debt in the mortgage.

None of these cases appears helpful in the case before us. We agree with the distinguished District Judge that:

"There are no facts present of other parol or written contracts, intervening third party liens or equities or ambiguities, and it is unnecessary to explore the State of Indiana law on such subjects. There is no written or oral simultaneous pronouncement of the parties that the second loan was or was not within the mortgage coverage of paragraph 14, so the intent of the parties must be governed by paragraph 14 of that mortgage."

With some exceptions, none of which are here applicable, a trustee in bankruptcy "'stands in the shoes of the bankrupt' and has no better title than the bankrupt had at the time of the filing of the petition." Collier on Bankruptcy, Vol. 4, pages 947–8. Thus the Trustee here occupies the same position as the Woodruffs. We are, therefore, concerned solely with the meaning and intent of the parties as expressed in the language used in the mortgage and the effect of that

language as between the original parties themselves.

Paragraph 14 clearly provides that the mortgage shall not only secure any and all renewals of the promissory note specifically named therein, but shall, in addition, secure the payment to the mortgagee of any other indebtedness, which the mortgagors may, from time to time, owe the mortgagee, while the mortgage is in effect.

The judgment of the District Court is affirmed.

Affirmed.