## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 23 2019, 5:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

J.F. Beatty
Kathryn Merritt-Thrasher
Landman Beatty, Lawyers
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Kurt V. Laker
Mark S. Gray
Doyle & Foutty, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Drake Investments, LTD and Paul D. Huntley, *Appellants-Defendants,* <br><br> v. <br><br> Peter Ballatan, *Appellee-Plaintiff* | August 23, 2019 <br><br> Court of Appeals Case No. 18A-PL-2775 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Cynthia Ayers, Judge <br><br> Trial Court Cause No. 49D04-1709-PL-34217 |

**May, Judge.**

[1] Drake Investments and Paul D. Huntley ("Doug") (collectively "Appellants") appeal the trial court's entry of summary judgment in favor of Peter Ballatan. Appellants raise two issues on appeal, which we restate as whether the trial

court erred in denying their motion for summary judgment and granting Ballatan's motion for summary judgment. We affirm.

## Facts and Procedural History

[2] On September 28, 2007, Ballatan obtained a judgment in the amount of $125,438.43 against Joanne Huntley ("Joanne") in a civil case, Cause No. 49D03-0403-PL-000625 ("Cause 0625"). The judgment represented lost rental income and travel expenses incurred by Ballatan in a real estate dispute with Joanne. At the time of that dispute, Joanne owned four parcels of land in Indianapolis, Indiana: 460 North Kealing Avenue; 6464 Brookville Road; 5235 East Washington Street; and 5269 East Washington Street (collectively, "Properties").

[3] However, while Cause 0625 was pending, Joanne purported to grant mortgages on each of the Properties to her son, Doug. The mortgages were executed on March 1, 2007, via three mortgage documents. The mortgage documents consist of pre-printed forms with blank spaces for the parties to insert the requisite information. Each document consisted of one substantive page.

[4] Joanne and Doug completed the documents by hand and had them notarized. The mortgage documents indicate that Joanne agreed to pay Doug $80,000.00 secured by the Kealing Avenue property, $250,000.00 secured by the Brookville Road property, and $500,000.00 secured by the two Washington Street properties (hereinafter collectively, "Huntley Mortgages"). Each document

states that Joanne "mortgage[s] and warrant[s] to Paul Douglas Huntley" the

Properties. (Appellants' App. Vol. II at 131, 134, & 137.) The boilerplate

language of each document states

> the mortgagor expressly agree [sic] to pay the sum of money
> above secured, without relief from valuation or appraisement
> laws; and upon failure to pay any one of said notes, or any part
> thereof, at maturity, or the interest thereon, or any part thereof,
> when due, or the taxes or insurance as hereinafter stipulated,
> then all of said notes are to be due and collectible, and this
> mortgage may be foreclosed accordingly. And it is further
> expressly agreed, that until all of said notes are paid, said
> mortgagor will keep all legal taxes and charges against said
> premises paid as they become due, and will keep the buildings
> thereon insured for the benefit of the mortgagee, as   h [sic]
> interest may appear and the policy duly assigned to the
> mortgagee, to the amount of                [sic] Dollars, and failing
> to do so, said mortgagee, may pay said taxes or insurance, and
> the amount so paid, with per cent interest thereon, shall be a part
> of the debt secured by this mortgage.

*Id.*

[5]     In his affidavit designated at summary judgment, Doug averred Joanne

"mortgaged to me the properties . . . in exchange for me taking care of her

living expenses, including making monthly payment to her lender for her

personal residence in Johnson County, ensuring that all property taxes,

insurance and her other daily living expenses were paid timely." (*Id.* at 108 ¶

7.)[1] On or about August 27, 2008, Joanne transferred ownership in the Properties from herself as an individual to herself as trustee of the Joanne B. Huntley Trust. The purported mortgage interests conveyed by the Huntley Mortgages were not recorded until October 15, 2009.

On February 17, 2011, Doug paid Joanne $30,000.00, and Joanne transferred her ownership interests in the Properties to Doug, who purchased the Properties for investment purposes. On May 22, 2017, Doug transferred his ownership interest in the Properties to Drake Investments, LTD. Doug is the president of Drake Investments.

On September 7, 2017, Ballatan filed his complaint to renew and foreclose judgment lien against real property from Cause 0625. Doug asserted in his affidavit that he did not know about Ballatan's judgment in Cause 0625 until Ballatan filed suit on September 7, 2017. Joanne died on September 25, 2017. She did not make any payment to Ballatan toward satisfaction of the judgment before her death.

---

[1] The Appellants' Brief describes the arrangement as such:

> The undisputed material fact is that the Huntley Mortgages secured a debt owed by Joanne Huntley to Doug Huntley. While the specific nomenclature is not used, it appears from the undisputed facts the Huntley Mortgages were intended to serve as 'reverse mortgages' in which the Real Estate at Issue would secure payments made by Doug Huntley on behalf of Joanne Huntley as part of her retirement and/or estate plan.

(Appellants' Br. at 16 n.5.)

Ballatan moved for summary judgment on April 3, 2018. Appellants responded to Ballatan's motion for summary judgment and cross-moved for summary judgment on June 2, 2018. The trial court held a hearing on the cross-motions for summary judgment on September 25, 2018. The trial court issued findings, granted Ballatan's motion for summary judgment, and denied Appellants' cross-motion for summary judgment on October 23, 2018. The trial court ordered the Properties be sold and the proceeds used to satisfy the sums due to Ballatan.

# Discussion and Decision

When reviewing the grant or denial of a motion for summary judgment, we apply the same standard as the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 973 (Ind. 2005). We grant summary judgment "only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law." *Id*. Further, we construe all evidence in favor of the nonmoving party and resolve all doubts as to the existence of a material issue of fact against the moving party. *Id*. While the moving party must first put forth evidence to support the motion, "the opposing party may not rest on his pleadings, but must set forth specific facts, using supporting materials contemplated by Trial Rule 56, which demonstrate that summary judgment is not appropriate." *Conrad v. Waugh*, 474 N.E.2d 130,

134 (Ind. Ct. App. 1985). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Poyser v. Peerless*, 775 N.E.2d 1101, 1105 (Ind. Ct. App. 2002).

[10] We do not resolve questions of credibility or weigh evidence at the summary judgment stage of proceedings. *See Kader v. State*, 1 N.E.3d 717, 727 (Ind. Ct. App. 2013) ("Assessments of credibility and weight are the province of the fact-finder at trial, not the trial court at summary judgment."). Summary judgment is not meant to be a substitute for trial and should not be granted merely because the party appears likely to prevail at trial. *Hughley v. State*, 15 N.E.3d 1000, 1005 (Ind. 2014).

[11] We do not modify our standard of review when the parties make cross motions for summary judgment. *State Auto Ins. Co. v. DMY Realty Co., LLP*, 977 N.E.2d 411, 419 (Ind. Ct. App. 2012). "Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Id*. The trial court's entry, in its summary judgment order, of findings of fact and conclusions of law does not change our standard of review. *Id*. We are not bound by the trial court's findings of fact and conclusions of law. *Id*. However, they may aid our review. *Id*.

# Validity of Huntley Mortgages

[12]     The parties do not dispute that Ballatan's judgment is a valid lien against the Properties pursuant to Indiana Code section 34-55-9-2.[2]   However, Appellants assert that Doug's purported mortgage interests should take priority over Ballatan's judgment lien, because Indiana law places judgment liens subordinate to other liens. *See Huntingburg Prod. Credit Ass'n v. Griese*, 456 N.E.2d 448, 452 (Ind. Ct. App. 1983) ("Liens for judgments are subordinate to all prior legal or equitable liens[.]").   Ballatan asserts the Huntley Mortgages cannot have priority over his judgment lien because these purported mortgages are invalid.

[13]     A "mortgage" is defined as a "conveyance of title to property that is given as security for the payment of a debt or the performance of a duty and that will become void upon payment or performance according to the stipulated terms." MORTGAGE, Black's Law Dictionary (11th ed. 2019).   The term "mortgage" is also used to refer to the instrument specifying the terms of such a transaction. *Id*.   In Indiana, the proper form for mortgages is defined by a statute that states:

> A mortgage of land that is:
>
> worded in substance as "A.B. mortgages and warrants to C.D."
> (here describe the premises) "to secure the repayment of" (here

---

[2] That statute provides, in relevant part: "All final judgments for the recovery of money or costs . . . constitute a lien upon real estate and chattels real liable to execution in the county where the judgment has been duly entered and indexed."  Ind. Code § 34-55-9-2.

recite the sum for which the mortgage is granted, or the notes or other evidences of debt, or a description of the debt sought to be secured, and the date of the repayment); and

dated and signed, sealed, and acknowledged by the grantor;

is a good and sufficient mortgage to the grantee and the grantee's heirs, assigns, executors, and administrators, with warranty from the grantor (as defined in IC 32-17-1-1) and the grantor's legal representatives of perfect title in the grantor and against all previous encumbrances. However, if in the mortgage form the words 'and warrant' are omitted, the mortgage is good but without warranty.

Ind. Code § 32-29-1-5.

[14] All mortgages must be secured by a debt. *Plummer & Co., Inc. v. Nat'l Oil & Gas. Inc.*, 642 N.E.2d 291, 292 (Ind. Ct. App. 1994), *trans. denied*. The debt need not be described with literal accuracy but it "must be correct so far as it goes, and full enough to direct attention to the sources of correct information in regard to it, and be such as not to mislead or deceive, as to the nature or amount of it, by the language used." *Bowen v. Ratcliff*, 39 N.E. 860, 862 (Ind. 1895). It is necessary for the parties to the mortgage to correctly describe the debt "so as to preclude the parties from substituting debts other than those described for the mere purpose of defrauding creditors." *Plummer & Co., Inc.*, 642 N.E.2d at 292. As our federal sister court has observed, "most Indiana cases have examined the description of the debt as a whole to decide whether it puts a potential purchaser on in essence *inquiry* notice of an encumbrance, and whether it is

specific enough to prevent the substitution of another debt." *In re Kraft, LLC*, 429 B.R. 637, 653 (Bankr. N.D. Ind. 2010) (emphasis in original).

[15] In *SPCP Group, LLC v. Dolson, Inc.*, Earlene Holland owned four lots in Jasper, Indiana. 934 N.E.2d 771, 772-773 (Ind. Ct. App. 2010). She leased the property to Dolson, Inc., and Dolson's president and secretary/treasurer, Shanna and Maurice Doll, signed the lease. *Id*. at 773. On December 24, 2001, Holland and Dolson purported to execute a new mortgage in favor of Terre Haute First National Bank for the purpose of refinancing. *Id*. The mortgage document described the secured debt by referencing a promissory note dated December 27, 2001, and executed by the two Dolls and C. Wayne Thompson. *Id*. The Dolls executed a promissory note, but Thompson did not execute the note. *Id*. at 774. Terre Haute First National Bank assigned its interests to SPCP, and SPCP initiated a foreclosure action against Holland and others. *Id*. The trial court granted summary judgment in favor of Holland and against Dolson after concluding the December 24, 2001, mortgage was invalid because the debt was not accurately described. *Id*. at 775.

[16] On appeal, we first assessed the accuracy of the description of the debt and concluded the description was inaccurate because Thompson did not execute the note and therefore was not a primary obligor. *Id*. at 776. Thompson was a guarantor rather than a co-maker of the note. *Id*. Next, we looked to see whether the inaccuracy was sufficiently material to mislead or deceive as to the nature and amount of the debt. *Id*. We concluded that it was sufficiently material to mislead because it permitted SPCP to release Thompson while

seeking recovery of the debt from Holland. *Id*. at 777. Also, Thompson's status as guarantor rather than co-maker of the note altered Holland's remedies against Thompson in the event of default. *Id*.

[17]     The Huntley Mortgage documents describe three debts Joanne purportedly owed to Doug as debts for $80,000.00; $250,000.00; and $500,000.00 respectively. The Huntley Mortgage documents refer to notes evidencing these debts, (*see* Appellants' App. Vol. II at 131, 134, & 137 ("[M]ortgagor expressly agrees to pay the sum of money secured, without relief from valuation or appraisement laws; and upon failure to pay any one of said notes, or any part thereof…then all of said notes are to be due and collectible.")), but Doug did not designate the notes purportedly referred to in the Huntley Mortgage documents. Instead, Doug's affidavit and his averments in his appellate brief reveal the true nature of the debts – the mortgages were not meant to secure monetary loans he gave to Joanne; rather, the amounts listed represented expected future expenses Doug would incur in covering Joanne's living expenses. (*See* Appellants' App. Vol II at 108 ¶ 7.) *See supra* n.1.

[18]     Like in *SPCP Group, LLC*, the Huntley Mortgage documents fail to accurately describe the debt. The Huntley Mortgage documents describe the debt in a misleading and deceiving manner because, on their face, Joanne "expressly agree[s] to pay the sum of money above secured." (Appellants' App. Vol. II at 131, 134, & 137.) However, Joanne did not owe money to Doug; Doug was paying Joanne's future living expenses. Further, the Huntley Mortgage documents do not include a date of repayment as required by Indiana Code

section 32-29-1-5. Therefore, one cannot tell from looking at the Huntley Mortgage documents when Doug's purported mortgage interest in the Properties was scheduled to expire. *See In re Canaday*, 376 B.R. 260, 270 (Bankr. N.D. Ind. 2007) (listing failure to include the date of repayment secured by a purported mortgage in the mortgage instrument as one of the reasons a purported mortgage did not satisfy the requirements of the statute). In short, the descriptions of the debts in the Huntley Mortgage documents are inaccurate.

[19] Next, we evaluate whether the inaccuracies are sufficiently material to mislead or deceive as to the nature and amount of the debt. The Huntley Mortgage documents make no mention of Doug's agreement to cover his mother's living expenses in exchange for mortgage interests in the Properties. Further, the Huntley Mortgage documents do not connect the debts described therein with the expenses intended to be incurred in covering Joanne's living expenses. The descriptions of the debts are so vague that they do not preclude Joanne and Doug from substituting other debts for the debts described. Thus, the inaccuracies contained in the Huntley Mortgage documents are materially misleading regarding the nature and amount of the debt, and we therefore hold the Huntley Mortgages are invalid. *See SPCP Group, LLC*, 934 N.E.2d at 779 (holding plaintiff could not foreclose on mortgage because it contained an

inaccurate and materially misleading description of the debt it purported to secure).[3]

## Bona Fide Purchaser Status

[20] Nevertheless, we must still evaluate whether a genuine issue of material fact exists regarding whether Doug and/or Drake Investments were bona fide purchasers when they took ownership of the Properties. The bona fide purchaser doctrine protects a bona fide purchaser against prior interests in land. *Clarkson v. Neff*, 878 N.E.2d 240, 244 (Ind. Ct. App. 2007), *trans. denied*. A bona fide purchaser buys real estate "in good faith, for . . . valuable consideration, and without notice of the outstanding rights of others." *Keybank Nat. Ass'n v. NBD Bank*, 699 N.E.2d 322, 327 (Ind. Ct. App. 1998). It is an equitable doctrine that recognizes "every reasonable effort should be made to protect a purchaser of legal title for . . . valuable consideration without notice of a legal defect." *Id*. A person may have either constructive or actual notice of prior interests in the land. *Id*. "Constructive notice is provided when a deed or mortgage is properly acknowledged and placed on the record as required by statute." *Id*. Actual notice occurs

> when notice has been directly and personally given to the person to be notified. Additionally, actual notice may be implied or inferred from the fact that the person charged had means of

---

[3] For the same reasons we reject Appellants' arguments that these documents are legal mortgages, we also decline to hold the Huntley Mortgages could survive as equitable mortgages. 59 C.J.S. *Mortgages* § 148 ("A mortgage[,] to be effective, must describe or identify the debt or liability intended to be secured thereby.")

obtaining knowledge which he did not use. Whatever fairly puts a reasonable, prudent person on inquiry is sufficient notice to cause that person to be charged with actual notice, where the means of knowledge are at hand and he omits to make the inquiry from which he would have ascertained the existence of a deed or mortgage. Thus, the means of knowledge combined with the duty to utilize that means equates with knowledge itself. Whether knowledge of an adverse interest will be imputed in any given case is a question of fact to be determined objectively from the totality of the circumstances.

*Id.* (internal citations omitted).

[21] Ballatan contends that because his judgment against Joanne was a matter of public record, Doug should be charged with knowledge of the judgment lien. A judgment lien is statutory. *Lobb v. Hudson-Lobb*, 913 N.E.2d 288, 295 (Ind. Ct. App. 2009). The statute provides: "All final judgments for the recovery of money . . . constitute a lien upon real estate . . . in the county where the judgment has been duly entered and indexed in the judgment docket as provided by law . . . after the time the judgment was entered and indexed." Ind. Code § 34-55-9-2. Here, the judgment was duly entered and indexed in the judgment docket of the Marion County Clerk. (*See* App. Vol. II at 200-204). Therefore, the judgment lien became effective when it was entered and indexed.

[22] Doug avers he did not know about Ballatan's judgment lien before Ballatan filed his complaint in the case at bar on September 7, 2017. Nevertheless, the records of the Marion County Clerk are available for public inspection. "Public records are notice to the world, and it is not necessary to prove that a man has

examined a record in order to bind him with notice of its contents." *Keesling v. Doyle*, 35 N.E. 126, 127 (Ind. Ct. App. 1893).[4]

[23]    Doug does not argue or designate any facts that would have called into question his ability to obtain knowledge of the judgment. Therefore, as a matter of law, knowledge of the judgment can be imputed to him. *See State v. Cox*, 377 N.E.2d 1389, 1392 (Ind. Ct. App. 1978) (holding that subsequent purchaser acquired land with notice of and subject to State's judgment lien when State's lien was recorded in judgment docket and order book). As Doug's assertion that he did not know about the judgment lien does not create a genuine issue of material fact about whether knowledge of the judgment lien can be imputed to him, summary judgment for Ballatan was not erroneous. *See Herron v. First Financial Bank, N.A.*, 91 N.E.3d 994, 999 (Ind. Ct. App. 2017) (holding judgment lien that attached to property has priority over subsequent mortgage).[5]

# Conclusion

[24]    The Huntley Mortgages are invalid because they fail to accurately describe the debts to be repaid and the inaccuracies are sufficiently material to mislead or

---

[4] As Ballatan observes, if knowledge of a public record cannot be imputed to a subsequent purchaser, "then any purchaser subsequent to the attachment of the judgment could defeat the lien merely by ignoring (declining to search) the county judgment docket." (Appellee's Br. at 13.)

[5] Because Doug is the president of Drake Investments, it also could not be a bona fide purchaser, and summary judgment for Ballatan was appropriate against Drake Investments for the same reasons it was appropriate against Doug.

deceive others regarding the nature of the debt.[6]  Additionally, Doug was not a bona fide purchaser when he purchased the Properties and subsequently conveyed them to Drake Investments.  Therefore, we affirm the trial court's grant of summary judgment to Ballatan.

[25]  Affirmed.

Mathias, J., and Brown, J., concur.

---

[6] Because we hold the Huntley Mortgages were invalid from the beginning, we need not address whether Ballatan is barred from asserting the Huntley Mortgages are fraudulent, whether Doug's mortgage interests merged with his ownership interests when he bought the Properties, or whether Doug is a bona fide mortgagee who takes free of later claims.  The Huntley Mortgages simply do not have priority over Ballatan's judgment lien because the purported mortgages are invalid.